BERSCHLER ASSOCIATES, PC
Arnold I. Berschler [SBN 56557]
22 Battery Street, suite 810
San Francisco, CA 94111
Tel. 415 398 1414

Attorneys for ROBYN LYNN KELLY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBYN LYNN KELLY,<br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>RICHARDSON'S BAY REGIONAL<br>AGENCY, CURTIS HAVEL,<br>　　　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES<br>AND FOR INJUNCTIVE RELIEF**<br><br>[Jury Trial Request] |

Robyn Lynn Kelly complains against the defendants for damages, alleging the following in support.

### JURISDICTION AND VENUE

1. <u>Original Jurisdiction</u>: Certain of Plaintiff's causes of action arise under 28 U.S.C. §§ 1331 and §§1343(a); et seq. because such are brought to obtain compensatory and punitive damages, injunctive relief and attorney fees, pursuant to 42 U.S.C. §§ 1983 and 1988, for the deprivation under color of state law, of the rights of Plaintiff, a citizen of

the United States, secured by the U. S. Constitution, Amendments IV, V and XIV, §1.

2. <u>Pendent/Supplemental Jurisdiction</u>: pursuant to 28 U.S.C. § 1367(a), the Honorable Court has jurisdiction over certain of Plaintiff's causes of action that are based upon the laws and the constitution of the State of California. Such causes of action arise out of the same nucleus of facts, and point to the same party-defendants, as are complained in the original jurisdiction causes of action. Further, Plaintiffs' causes of action invoking the Court's original jurisdiction are meritorious, and the harm complained is substantial. Wherefore, this Honorable has the discretion to undertake jurisdiction over said pendent causes of action, which jurisdiction Plaintiff now respectfully request the Court to invoke.

3. <u>Intra-district Assignment</u>: Assignment of this action to the SAN FRANCISCO DISTRICT is appropriate because:

   a) All of the events or omissions which give rise to the claim occurred in Marin County, California.

   b) All parties reside in and/or are found generally in Marin County, California.

## JURY TRIAL REQUEST

4. Plaintiff Robyn Lynn Kelly requests a jury trial in this action.

## PARTIES

5. Robyn Lynn Kelly is an adult and otherwise competent to sue. At all relevant times, she was a citizen of the United States, and was domiciled in the State of California.

6. At all relevant times, Robyn Lynn Kelly owned a pleasure vessel (Hereinafter, "subject vessel"), which was seaworthy or was reasonably fit or capable of being made fit to be used as a means of transportation by water. (Robyn Lynn Kelly alternatively is referred

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

to in this Complaint as "Ms. Kelly.")

7. Richardson's Bay Regional Agency (hereinafter, alternatively, "RBRA") [1] is a State of California public entity originally formed in 1985 under a joint powers agreement ("1985 RBRA Agreement" hereinafter) by Marin County, the Cities of Sausalito, Belvedere, Mill Valley and Tiburon, said joint powers agreement being reconstituted and/or renewed in 2000 ("2000 RBRA Agreement"), pursuant to Article 1, Chapter 5, Division 7, Title 1 of the California Government Code. (Govt. Code, §§6500; et seq.)

8. At all relevant times, Curtis Havel (alternatively, "Mr. Havel") was employed by RBRA as its harbormaster.

**CALIFORNIA GOVERNMENT CODE ADMINISTRATIVE PROCEDURE**

9. Ms. Kelly's complained of injuries and damages arose out of the wrongful designation and posting of her subject vessel as alleged "marine debris" continuing through its seizure, then destruction in a period commencing on or about November 14, 2019 and extending through on or about December 2, 2019.

10. Plaintiff filed her administrative claim for damages with the RBRA on February 14, 2020. On March 30, 2020, RBRA rejected her claim. Subsequently, on or about August 3, 2020, Ms. Kelly filed her amended administrative claim (a true correct copy is attached as EXHIBIT 1, and incorporated by reference.) RBRA rejected that amended claim, asserting the six-month period in which to file causes of action under the California Government Code in a California state court continued to be September 30, 2020.

---

[1]   Richardson's Bay Regional Agency also is known as Richardson Bay Regional Agency.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF            CIVIL No. ----

## GENERAL FACTUAL ALLEGATIONS

### Evolution of Enforcement Mechanisms Controlling Uses in Richardson Bay

11. World War II turned a relatively nonindustrial San Francisco Bay, especially Richardson Bay abutting Marin City, and Richmond into a shipbuilding powerhouse. "In the decade prior to 1940, America's shipyards launched only 23 ships. In the five years after 1940, American shipyards launched 4,600 ships. San Francisco Bay Area shipbuilders produced almost 45 percent of all the cargo shipping tonnage and 20 percent of warship tonnage built in the entire country during World War II. The war lasted 1,365 days. In that span of time Bay Area shipyards built 1,400 vessels--a ship a day, on average." [2] An enormous surge of building along the waterfronts of the bay caused in-filled marshes, disrupted tidal lands, excavated hills to build flatlands. [3]  By the late 1950s in-fill of the Bay had become alarming. In 1961 three Berkeley women formed what now is called the Save The Bay organization, leading to the formation in 1965 of the state commission, San Francisco Bay Conservation & Development Commission ("BCDC"). [4] BCDC's ongoing primary missions are to preserve marsh, tideland, to encourage recapture and conversion of filled land back to nature, and to improve public access to waters. [5]

12. In the early 1980s, all of the municipalities surrounding Richardson Bay jointly studied

---

[2]  See, https://www.nps.gov/nr/travel/wwIIbayarea/shipbuilding.htm. Judicial notice requested.
[3] "As Charles Wollenberg writes in "Marinship at War: Shipbuilding and Social Change in Wartime Sausalito," by April, earthmoving equipment was tearing down a hill overlooking the northern Sausalito waterfront, dredgers were creating a deep-water channel in Richardson Bay, and work had begun on 21 buildings and six shipways. See, https://www.sfchronicle.com/chronicle_vault/article/Marin-County-shipyard-was-built-in-a-hurry-after-15146163.php Judicial notice requested.
[4] Created pursuant to the *McAteer-Petris Act* (Gov C §§ 66600 et seq.) Judicial Notice Requested.
[5] See, http://www.bcdc.ca.gov/aboutus/ Judicial notice requested.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

the water quality and uses of Richardson Bay, producing a plan proposing policies for

regulating uses in the future, a plan titled *Richardson Bay Special Plan* [April 1984]

("Special Plan"). [6]   Such Special Plan referenced and defined "anchor-out' vessels.

13. The 1985 RBRA Agreement was the formal adoption of the proposals of policies in the

Special Plan. The 1985 RBRA Agreement treated anchor-outs as a problem preferably to

be eliminated or ameliorated if the population could not be eradicated.

14. The passage of the *Cortese-Knox-Hertzberg Local Government Reorganization Act of

2000* (Govt. Code, §§50000; et seq.) enabled the formation of a subdivision of the State

of California known as the Marin Local Agency Formation Commission (Hereinafter,

"MLAFCO.") Further, MLAFCO determined RBRA to be local agency of Marin

County whose Sphere of Influence ("SIO") was to be defined.

15. Concurrent with the implementation of *Cortese-Knox-Hertzberg Local Government

Reorganization Act of 2000*, Marin County, the Cities of Sausalito, Belvedere, Mill

Valley, and Tiburon entered the 2000 RBRA Agreement, which was essentially a

revision of the 1985 RBRA Agreement. Core policies of the 1985 RBRA Agreement

were incorporated in the 2000 RBRA Agreement. Included in those core policies was

the antipathy toward anchor-outs. Additionally, included was the status of the

Harbormaster as a peace officer.

16. The one of the subjects of regulation under the 2000 RBRA Agreement concerned

anchored-out vessels (or "anchor-outs") upon the Richardson Bay ("subject waters"),

among other categories of regulation. "Anchored-out" meaning watercraft that were

---

[6] See, https://bcdc.ca.gov/planning/reports/RichardsonBaySpecialAreaPlan_Apr1984.pdf Judicial notice requested.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

moored by anchors to the bay-bed or by line to stationary mooring balls, away from marinas or piers, for extended periods of time, e.g. 30 consecutive days.

17. On July 9, 1987 RBRA enacted Ordinance 87-1, which addressed control over watercraft afloat upon the subject waters, including houseboats, live-a-board vessels, and their moorings, particularly property rights appurtenant to privately owned mooring balls. [7] Ordinance 87-1 provided for due process in matters of anchoring and mooring; specifically providing for written notice to correct a condition, and an appeals process, if an, ". . . exception to the determination of the Harbor Master as stated in the notice may file a written appeal of the Harbor Master's decision to the Board of the Richardson Bay Regional Agency or its designee within fifteen (15) days of issuance of the notice."

18. Attached hereto as EXHIBIT 2 is a true correct copy of Ordinance 87-1. Plaintiff incorporates said exhibit herein by reference as if fully set forth at length. Judicial notice requested.

19. Further due process is provided through a path for injunction against practices of vessel owners to which RBRA took exception. See, EXHIBIT 2, p. 5, §11, Injunctive Relief.

20. On February 5, 1991, RBRA enacted Ordinance 91-3 [sic], which amended Ordinance 87-1, in part, through the device of amending Ordinance 91-1, which itself had flowed back to and amended No. 87-1. The No. 91-3 amendment, in its Section 2, inserted subsection (e) into Ordinance 87-1, §4. This subsection 4(e) gave the Harbormaster the power to enter any vessel this peace officer deemed in violation of RBRA or surrounding municipalities' codes or regulations. Importantly, No. 91-3, §2, at p. 3

---

[7] Such objects are hollow metal spheres floating upon the surface, anchored to the subject water's bed. The ball has metal loops ('eyes') to which a vessel's mooring lines can be attached.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

provided that no harbormaster or their deputies may enter or seize any vessel without first obtaining a warrant, if the owner was uncooperative. "Once the Harbor Master or his authorized representative has obtained a proper inspection warrant or other remedy provided by law to secure entry . . ." *Ibid.* A true correct copy of said Ordinance 91-3 is attached as EXHIBIT 3, and made part hereof as if fully set forth sat length. Judicial notice requested.

21. On June 13, 1991  RBRA enacted Ordinance 91-1 [sic],[8]  which amended Ordinance 87-1, but did not affect the mandate to obtain a warrant, set out in No. 91-3. A true correct copy of said Ordinance 91-1 is attached ass EXHIBIT 4, and made part hereof as if fully set forth sat length. Judicial notice requested.

22. On July 29, 1991, RBRA in enacting Ordinance 91-2 [sic], Section 15[9] provided for due process; giving  RBRA the power of nuisance remedy (i.e. injunction)   in all cases where nuisances existed, "nuisances" being defined in part as: "The keeping, storage, depositing or accumulation on, or attachment to, a vessel, barge or object, for an unreasonable period, of any personal property, including but not limited to abandoned, wrecked, dismantled or inoperative boats . . ." *Id.*, at p. 1.

23. Ordinance No. 91-2 provided for complex due process procedures, including notice of hearing before the RBRA hearing board, procedures at hearing (recording of testimony, evidence rules, right of vessel inspection), written findings of fact, and the right to appeal to the courts of California. A true correct copy of said Ordinance 91-2 is attached

---

[8]   Plaintiff has not been able to determine the solution to the apparent anomaly of this ordinance numbering, considering its dating.
[9] Plaintiff has not been able to determine the solution to the apparent anomaly of this ordinance numbering, considering its dating.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

as EXHIBIT 5, and made part hereof by reference as if fully set forth sat length. Judicial notice requested.

24. At all relevant times after 1991, RBRA codified its various ordinances, including *inter alia* ordinances 87-1, 91-2, 91-3 into a single code consisting of six titles, *Richardson's Bay Regional Agency Code*, a true correct copy of which is attached as EXHIBIT 6 and incorporated herein by reference. Judicial notice requested.  (Said code hereinafter, "RBRA Code.")

25. The RBRA Code incorporated the preexisting due process requirements of Ordinance nos. 87-1, 91-2, 91-3, *inter alia*, the requirement of obtaining a warrant to board and search or seize a vessel. See, RBRA Code, Title 2, Chap. 2.04, Harbor Master [sic], §2.040.010(e).

26. By reason of the foregoing premises and at all relevant times, RBRA had a policy that no generally occupied floating anchor-outs, which were anchored, could be searched and/or seized without first obtaining a warrant for such, save in instances of emergency. Obtaining a warrant in non-exigent circumstances, was a work rule for its Harbormaster.

27. In addition to the above said ordinances, at all relevant times, RBRA could resort to the law enforcement tools within Harb. & Nav. Code, Div. 3, Chap. 3 Art. 1, Wrecks And Wrecked Property, §§510; et seq. to eliminate public safety hazards. See, Harb. & Nav. Code, §523(a)(5)["When the vessel interferes with, or otherwise poses a danger to, navigation or to the public health, safety, or welfare."]; also, see, Harb. & Nav. Code, §523(a)(6)["When the vessel poses a threat to adjacent wetlands, levies, sensitive habitat, any protected wildlife species, or water quality."]

28. On information and belief, at all relevant times through year 2015, RBRA employed

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

California Harbors and Navigation Code, Division 3. Vessels, Chapter 3. *Wrecks and Salvage*, and its own ordinances to effect its policy of removing anchor-outs from RBRA waters.

29. On January 1, 2016, Harb. & Nav. Code, Div. 3, Chap. 3 Art. 3, *Marine Debris,* §§550; et. seq. became effective, providing RBRA with another statutory toolset to control the subject waters.

30. At all relevant times, RBRA Code incorporated the Harb. & Nav. Code, §550(a) definition of vessel.

31. At all relevant times, RBRA Code ignored the definition of "marine debris" found in Harb. & Nav. Code, 550(b).

32. At all relevant times, when seizing and removing vessels from subject waters, RBRA and Curtis Havel each have searched and/or seized such vessels pursuant to an RBRA custom and practice that used the police powers granted pursuant to Harb. & Nav. Code, §551(a), §551(b), but applied RBRA's own definition of what property was subject to §551, which definition was much broader and impermissibly vague; including cosmetic appearance and matters not constituting unseaworthiness; *viz*.: " . . . bilges are free of oil; no loose debris or materials on deck . . .  vessel is free of excessive marine growth . . ."; see, RBRA Code, §1.040.020 Definitions, at p. 2.

33. At all relevant times when applying §551(b), both RBRA and Curtis Havel searched and/or seized vessels in subject waters, which vessels did not meet the definition of "marine debris" in §550(b). Additionally, said vessels were not any danger to public safety, and were not obstructing navigation.

34.  Robyn Lynn Kelly is informed believes and alleges that RBRA, Curtis Havel and other

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

RBRA peace officers will continue to search and seize vessels upon subject waters through the above complained misuse of the police power granted in Harb. & Nav. Code, §551(a), 551(b),  pursuant to policy, custom and practice.

35. Plaintiff Kelly further alleges that RBRA's and Curtis Havel's above said policy, custom and practice at all relevant times in the past, and for the foreseeable future will unlawfully destroy or otherwise convert vessels owned or occupied by Plaintiff Kelly to her injury and damage. Moreover, Defendants' complained policies, customs and practices foreseeably will proximately cause injury and damage to other owners or occupiers of anchor-outs in subject waters, which vessels are not subject to Harb. Nav. Code, §§550; et seq.

36. In 1995 William "Bill" Price began employment as RBRA's Harbor Administrator also termed "Harbor Master" or "Harbormaster."

37. At all relevant times, pursuant to RBRA's policies, written and/or pursuant to its custom & practice, Mr. Price's duties included, *inter alia*, removing and causing to be removed from Richardson Bay anchor-out vessels that he, in his discretion, deemed problematical, including without limitation vessels he decided were unseaworthy, using RBRA's overbroad vague definition or  and/or were allegedly abandoned vessels.

38. Mr. Price, left RBRA employment in July 2019, and Curtis Havel replaced him as Harbormaster.

39. On information and belief, at all relevant times RBRA policy, custom and practice was that when hiring harbormasters it neither insured that  such were sufficiently trained to be competent peace officers, including requisite knowledge of laws, nor did RBRA attempt to cause its harbormasters to become so competent after hiring.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

40.  On information and belief, at all relevant times, Harbormaster Havel was not sufficiently trained to be a competent peace officer, including requisite knowledge of laws, and was incompetent in such duties.

41. At all relevant times, Defendant Havel adopted and employed the above complained policies, customs and practices that Mr. Price had followed.

42. On information and belief, in March 2019, RBRA received funding enabling it to expand resources, which RBRA used to pursue ridding anchor-outs more aggressively from subject waters. [10]

43. At all relevant times, Harbormaster Curtis Havel and RBRA implemented RBRA's overall program to eliminate anchor-outs more vigorously than had Mr. Price, including without limitation a policy, a moving force, to aggressively expand the definition of "marine debris" so broadly as to encompass cosmetic appearance and otherwise violate the scope of police power under §550(b). Said conduct including but not limited to:

(1) boarding anchor-out  vessels without consent, warrant or exigent circumstances, at least once in 2020, while the owner was aboard then refusing to disembark at the owner' request, proximately causing a violent confrontation, including battery, between Defendant Havel and the owner.

(2) Causing the seizure and destruction of a vessel, not subject to §550(b), and without a warrant, when actually knowing the owner live-aboard was ashore arraigning for a marina berth in 2020, and there were no exigent circumstances.

(3) Causing multiple seizures of multiple vessels that were not subject to §550(b),

---

[10]  See, https://www.marinij.com/2020/01/13/state-prods-marin-authority-to-abate-anchor-outs/. Judicial notice requested.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

and without a warrant, or exigent circumstances at all relevant times.

44. Mr. Havel and RBRA did so violate the scope of police power under §550(b) knowingly and intentionally at all relevant times.

45. At all relevant times, the United States Army Corp of Engineers ("ACOE") had a principal set of docks and piers on City of Sausalito's waterfront. ACOE's mission was, in part, to remove perceived hazards to navigation from waters over which the United States had co-existent jurisdiction in the San Francisco Bay Area, including Richardson Bay, at all relevant times.

46. At all relevant times, one particular ACOE dock, known as the "debris dock," together with its adjacent launching ramp, was a site at which RBRA would cause problematic vessels to be towed, dragged up the ramp by having an excavator bite into the vessel, destroying it, and the remains disposed.

**RBRA Seizes and Summarily Destroys Plaintiff's Vessel**

47. On or about November 14, 2019, Cutis Havel boarded Robyn Lynn Kelly's subject vessel without her consent, and without warrant, posted upon its weather-deck structure ("salon") an alleged 10-day notice pursuant to Harb. & Nav. Code, §551((a)(1)(B), which commanded her to remove the vessel from subject waters. A true correct copy of said notice is attached hereto as EXHIBIT 7, and is incorporated herein by reference as if fully set forth.

48. On or about November 18, 2019, Cutis Havel caused a true correct copy of EXHIBIT 7 & to be mailed, certified, without Ms. Kelly's name as part of the address, which proximately caused the notice never to be delivered. At all relevant times, Harbormaster Havel knew Ms. Kelly's name.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

49. On or about December 2, 2019, Curtis Havel, himself, and with the help of others who were working as RBRA's agents at Curtis Havel's direction, caused the subject vessel to be unfastened from its mooring, towed to the ACOE debris dock and summarily immediately destroyed within ten days of seizure.

50. At all relevant times, the subject vessel did not meet the definition of "marine debris" in §550(b).

51. At all relevant times, the subject vessel did not meet the mandatory criteria in §551(b).

52. At all relevant times before and on December 2, 2019, Ms. Kelly's subject vessel was her domicile, containing her clothing, papers, and other personal effects, including priceless irreplaceable family memorabilia.

53. At all relevant times prior to and on December 2, 2019, Curtis Havel actually knew that Ms. Kelly's subject vessel was her home, her domicile.

54. At all relevant times after December 4, 2019, Robyn Lynn Kelly has continuously owned and occupied another vessel as an anchor-out in Richardson Bay, with plans to continue to do so.

**Injury and Damage**

55. By reason of and as legal result of the foregoing premises, the destruction of her vessel-home proximately caused Ms. Kelly injury and damage, for which Defendants are liable:

   i)   The loss of the reasonable market value of the said vessel.

   ii)  The loss of the reasonable value of use of said vessel.

   iii) The loss of the reasonable market value of her personal property.

56. By reason of and as legal result of the foregoing premises, the destruction of her vessel-home proximately caused Ms. Kelly injury and damage, for which Defendants are liable:

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

i)  By causing her to become homeless.

ii)  By causing her humiliation and suffering.

iii)  By causing her to retain an attorney, incurring attorney fees.

### FIRST CAUSE OF ACTION

**[RBRA, Havel: 42 U.S.C., §§1983, 1988 – Fourth Amendment Violation]**

57. Plaintiff incorporates herein the allegations within above sections Jurisdiction and Venue, Jury Trial Request, Parties, California Government Code Administrative Procedure, and General Factual Allegations as if each were fully set forth at length.

58. The United States Constitution, Amendment IV provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Such are civil rights to which Ms. Kelly was entitled at all relevant times.

59. Through the seizure of the subject vessel, the above-referenced defendants wrongfully deprived Plaintiff of her Fourth Amendment civil rights in the following ways:

i)  Plaintiff was entitled to have the subject vessel be free from seizure unless there was a validly issued warrant therefor.

ii)  No warrant was obtained to support the seizure; although, said defendants had ample time to secure such.

iii)  No circumstances of emergency or public health, safety and/or welfare existed to justify a departure from the mandate that a warrant must have been secured before the seizure.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

iv) Knew, or as a competent peace officer ought to have known, that he had to obtain a warrant because there was no basis not to do so before having the subject vessel towed to the ACOE debris dock.

v) Misapplying RBRA's broad vague definition of what vessels qualified to be seized when implementing its police powers under §551(b).

vi) Disobeying RBRA's work rule policy of obtaining a warrant.

vii) RBRA acquiesced in its Harbormaster's deliberate intentional misapplication of Harb. & Nav. Code, §551 and RBRA Code as above discussed.

60. RBRA's official policy of failing to abide by the laws under which seizure were effected, Hab. & Nav. Code, §§550; et seq., including mislabeling as alleged "marine debris" seaworthy vessels such as Ms. Kelly's was a moving force causing the complained violation of Fourth Amendment rights.

61. Defendants' violation of  Ms. Kelly's said rights under the Fourth Amendment of the Constitution of the United States legally caused her to suffer the above said injury and damage, the extent of which now is not precisely known, wherefore, Plaintiff prays for leave to insert such amount when ascertained.

62. By reason of the foregoing Plaintiff is entitled to an award of punitive damages against Curtis Havel, to act as a warning to similarly situated peace officers enforcing Harb. & Nav. Code, §§550: et seq.

WHEREFORE, Plaintiff prays damage against each defendant as appears below.

## SECOND CAUSE OF ACTION

### [RBRA 42 U.S.C., §§1983, 1988 – Fifth Amendment Violation, Taking]

63.  Plaintiff incorporates herein the allegations within above sections Jurisdiction and

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

Venue, Jury Trial Request, Parties, California Government Code Administrative

Procedure, and General Factual Allegations as if each were fully set forth at length.

64. The United States Constitution, Amendment IV provides, in part, "No person shall be . . .

deprived of life, liberty, or property, without due process of law; nor shall private

property be taken for public use, without just compensation."

65. Ms. Kelly can and now does pursue RBRA, under 42 U.S.C., §1983, for a taking claim

under the Fifth Amendment without first having to exhaust state-based remedies. *Knick v.*

*Twp. of Scott,* __U.S.__ 139 S. Ct. 2162,| 204 L. Ed. 2d 558 (2019), 2019 U.S. LEXIS

4197, overruling *Williamson County Regional Planning Comm'n v. Hamilton Bank of*

*Johnson City*, 473 U. S. 172 (1985). The taking's particulars being:

i) Through the seizure of the subject vessel, Defendant RBRA wrongfully directly

deprived of her rights under the Fifth Amendment, and is liable in damages pursuant

to the doctrine established in *Monell v. Department of Social Services of the City of*

*New York*, 436 U.S. 658 (1978),  in the following ways:

ii) RBRA did not attempt to take the subject vessel through eminent domain

proceedings. Instead, RBRA misapplied  Harb. & Nav. Code, §551 as an inexpensive,

quick bypass.

iii) RBRA took the complained vessel, and whether it offers to compensate Plaintiff is

not relevant to a §1983 action premised upon the Takings Clause of the Fifth

Amendment.

iv) RBRA did not pay compensation prior to the seizure. ["A bank robber might give the

loot back, but he still robbed the bank." *Knick*, supra, at 11; "Our holding that

uncompensated takings violate the Fifth Amendment will not expose governments to

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

new liability; it will simply allow into federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court. "Id., at 23.]

v)  RBRA has not compensated Ms. Kelly, and insists no compensation is due.

66. By reason of the foregoing premises and as a legal result thereof, Plaintiff has been specially damaged, in sums according to proof, for which damage, and others as may apply, RBRA is liable.

WHEREFORE, Plaintiff pray for judgement against RBRA as prayed below.

### THIRD CAUSE OF ACTION

### [RBRA, Havel: Due Process Violations – U.S. Const., Amend. 14; Cal. Const., Art. 1, §7(a)]

67. Plaintiff incorporates herein the allegations within above sections Jurisdiction and Venue, Jury Trial Request, Parties, California Government Code Administrative Procedure, and General Factual Allegations as if each were fully set forth at length.

68.  U.S. Const., Amend. 14, §1 grants to Ms. Kelly the following civil rights:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

69. For RBRA and Harbormaster Havel to comply with due process when exercising police powers under Harb. & Nav. Code, §551(b), the defendants must restrict their action to only "marine debris," which Harb. & Nav. Code, §550(b) defines:

"Marine debris" is a vessel or part of a vessel, including a derelict, wreck,

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

hulk, or part of any ship or other watercraft or dilapidated vessel, that is

unseaworthy and not reasonably fit or capable of being made fit to be used as

a means of transportation by water.

70. Because of RBRA's and Mr. Havel's polices, customs and practices as moving forces, RBRA and Mr. Havel applied their own sweeping vague definition to Ms. Kelly's vessel because of its cosmetic appearance, whereby Defendants violated Harb. & Nav. Code, Div. 3, Ch. 3, Art. 3, *Marine Debris*; thereby depriving Ms. Kelly of due process all to her injury and damage for which the defendants are liable.

71. For RBRA and Harbormaster Havel to comply with due process when exercising police powers under Harb. & Nav. Code, §551(b), the defendants were required to comply with the post-seizure safe harbor provision of Art. 3, *Marine Debris*, which provides both that notice of intent to seize be mailed to the vessel owner, and that such notice state:

"A notice sent to the owner shall contain the information specified in

subparagraph (A), and further state that the marine debris will be removed and

disposed of within 10 days if not claimed, and that the marine debris may be

claimed and recovered upon the payment of the public agency's costs.

Harb. & Nav. Code, §551(a)(2)(B).

72. Because of RBRA's and Mr. Havel's polices, customs and practices as moving forces, RBRA and Mr. Havel violated Art. 3, *Marine Debris* when these defendants caused the subject vessel to be destroyed immediately upon being seized, well within ten days of seizing, thereby depriving Ms. Kelly of due process all to her injury and damage for which the defendants are liable.

73. Because of RBRA's and Mr. Havel's polices, customs and practices as moving forces,

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

RBRA and Mr. Havel violated Art. 3, *Marine Debris* in that these defendants at all relevant times failed to provide the safe harbor notice to Ms. Kelly, thereby depriving Ms. Kelly of due process all to her injury and damage for which the defendants are liable.

74. Because of RBRA's and Mr. Havel's polices, customs and practices as moving forces, when Defendants seized the subject vessel in the manner complained, RBRA and Mr. Havel have violated Ms. Kelly's California Constitutional right of due process in California's Constitution, Art. 1, §7(a), all to her injury and damage for which the defendants are liable.

75. Defendants' violation of Ms. Kelly's said rights under the Fourteenth Amendment of the Constitution of the United States legally caused her to suffer the above said injury and damage, the extent of which now is not precisely known, wherefore, Plaintiff prays for leave to insert such amount when ascertained.

76. Defendants' violation of Ms. Kelly's said rights under Art. 1, §7(a) of the Constitution of the State of California legally caused her to suffer the above said injury and damage, the extent of which now is not precisely known, wherefore, Plaintiff prays for leave to insert such amount when ascertained.

77. By reason of the foregoing Plaintiff is entitled to an award of punitive damages against Curtis Havel, to act as a warning to similarly situated peace officers enforcing Harb. & Nav. Code, §§550: et seq.

## FOURTH CAUSE OF ACTION

### [RBRA, Havel: negligence – Govt. Code]

78. Plaintiff incorporates herein the allegations within above sections Jurisdiction and

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

Venue, Jury Trial Request, Parties, California Government Code Administrative

Procedure, and General Factual Allegations as if each were fully set forth at length.

79. RBRA owed to Ms. Kelly duties of care to apply the Harb. & Nav, Code, §§550; et seq.

and companion RBRA Code lawfully, which RBRA did not, negligently breaching its

duties in the premises.

80. Defendant Havel owed to Ms. Kelly duties of care to apply the Harb. & Nav, Code,

§§550; e seq. and companion RBRA Code lawfully, which he did not, negligently

breaching his duties in the premises.

81. By reason of the foregoing premises and as a legal result thereof, Plaintiff has been

specially damaged, in sums according to proof, for which damages, and others as may

apply, these defendants are liable.

82. Defendants' said negligence legally caused Ms. Kelly to suffer the above said injury and

damage, the extent of which now is not precisely known, wherefore, Plaintiff prays for

leave to insert such amount when ascertained.

WHEREFORE, Plaintiff pray for judgement against these defendants as prayed below.

## FIFTH CAUSE OF ACTION

### [RBRA, Havel: conversion – Govt. Code]

83. Plaintiff incorporates herein the allegations within above sections Jurisdiction and

Venue, Jury Trial Request, Parties, California Government Code Administrative

Procedure, and General Factual Allegations as if each were fully set forth at length.

84. On or about December 2, 2019, these defendants dispossessed Plaintiff of the subject vessel

by destroying it and disposing of its salvage all to Plaintiff's damage for which these

defendants are liable.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

85.  As a proximate result of converting subject vessel, the defendants injured and damaged Plaintiff, for which injuries and damages they are liable.

86. Defendants' said conversion of the subject vessel legally caused Ms. Kelly to suffer the above said injury and damage, the extent of which now is not precisely known, wherefore, Plaintiff prays for leave to insert such amount when ascertained.

WHEREFORE, Plaintiffs pray for damages against these defendants, as prayed below.

### SIXTH CAUSE OF ACTION

### [RBRA, Havel – Injunctive relief – Preliminary, Permanent]

87.  Plaintiff incorporates herein the allegations within above sections Jurisdiction and Venue, Jury Trial Request, Parties, California Government Code Administrative Procedure, and General Factual Allegations as if each were fully set forth at length.

88. Defendants' abuse of   Harb. & Nav. Code, Div. 3, Chap. 3 Art. 3, *Marine Debris*, §§550; et. seq. by ignoring the statutory definition of "marine debris," substituting in place  a vaguely worded standard that allows targeting and destruction of anchor-outs for cosmetic appearances has and most probably will continue in the future to result in immediate and irreparable harm to anchor-outs generally, and threatens to do so to Ms. Kelly in particular.

89. Defendants' wrongful policies customs and practices have resulted in creating a widespread fear and anger among anchor-outs. At least one violent confrontation between an owner and Mr. Havel already has occurred. A confrontation which could readily have been avoided if Mr. Havel had followed RBRA policy in the RBRA Code by obtaining a warrant before attempting to board the owner's vessel-home.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

90. Many anchor-outs have lost their vessel homes without any reasonable opportunity to take steps to secure housing when such were summarily crushed by the RBRA at Mr. Havel's direction. As a legal result, these persons and been forced into homelessness, not only suffering the degradation of such, but also becoming subject to ancillary harm, such as exacerbated poor physical health, even more depression than these "pandemic times" cause many persons, the loss of priceless family irreplaceable family memorabilia, and similar.

91. Defendants' wrongful policies customs and practices have resulted in creating a widespread fear and anger among anchor-outs, which has manifested in protests by anchor-outs. [11]

92. The policies that Ms. Kelly respectfully prays the Honorable Court enjoin the defendants are:

i) To apply the definition of "marine debris" found in §550(b), instead of applying the RBRA Code's vague overly broad definitions of seaworthy when assessing whether a vessel is subject of §551(b) enforcement.

ii) To not board targeted vessels in any instance solely to post a notice upon the vessel, without either the owner's permission or a warrant; rather, applying the notice to a portion of the vessel accessible without boarding (e.g., its hull at points of weather-deck entry, one starboard, one port).

iii) To not seize vessels without the owner's consent or warrant therefor.

___

[11] See, *Richardson Bay jurisdictions urged to ditch anchorage agency* at https://www.marinij.com/2020/09/20/richardson-bay-jurisdictions-urged-to-ditch-anchorage-agency/ Judicial notice requested.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

iv) To not seize vessels without complying with Harb. & Nav, Code, §§550, 551.

v) To not destroy or otherwise convert seized vessels before a 10-day post seizure period for intact vessels.

vi) To not seize vessel in a manner that itself causes such to become unseaworthy. (e.g., using excavators to drag vessels up the ACOE debris dock ramp, as happened to the subject vessel.)

93. By reason of the foregoing premises, Ms. Kelly has and probably will suffer irreparable losses, which the remedies at law are not fully adequate to compensate for such injuries. Further, considering the balance of hardships between the plaintiff and the defendants, a remedy in equity is warranted. Finally, the the public interest would not be disserved by a preliminary or permanent injunction.

i) All Robyn Lynn Kelly is asking is that RBRA and Harbormaster Havel follow the law and the RBRA Code section applicable to due process as policy, including use of warrants or application for injunction.

WHEREFORE, Plaintiff pray for injunctive relief against the defendants as follows.

1) For preliminary injunction and for permanent injunction of RBRA in its application of police powers pursuant to Harb. & Nav. Code, Div. 3, Chap. 3 Art. 3, *Marine Debris*, §§550; et. seq. and/or RBRA Code.

2) For general damage and special damage, according to proof, against all defendants.

3) For costs of suit against all defendants.

4) For attorney fees, according to proof, against all defendants as may be allowed by law under respective causes of action.

5) For punitive damages, according to proof, against Defendant Curtis Havel as may be

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----

1    allowed by law under respective causes of action.

2

3
    Dated September 29, 2020                    BERSCHLER ASSOCIATES, PC
4

5

6
                                        /s/ Arnold I. Berschler
7    _____
    ARNOLD I. BERSCHLER attorney for
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF          CIVIL No. ----